IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    Case No. 6:14-CR-10033-JTM

MARLA R. MCDONALD,

        Defendant.

**MEMORANDUM AND ORDER**

Defendant Marla R. McDonald ("Defendant") is charged with sixteen counts in the Superseding Indictment, including making a false statement to obtain Social Security benefits (42 U.S.C. § 408(a)(4)), mail fraud (18 U.S.C. §§ 1341 and 1342), and wire fraud (18 U.S.C. §§ 1342 and 1343). For each of these three substantive counts, the Superseding Indictment also adds a related count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), which prohibits the knowing and intentional use of another person's identity in connection with a crime. In each instance, the general nature of the crime is the same: Defendant falsely represented that one Michael McCord Hunter ("Hunter") was the biological father of her son, N.D.H. in order to obtain Social Security benefits after Hunter's death. This matter is now before the court on Defendant's motion to dismiss Counts Two, Four, and Six, namely the counts that charge Defendant with aggravated identity theft.[1] The court conducted oral argument on the motion on August 12, 2014. For the reasons stated below, Defendant's motion is denied.

---

[1] Defendant's motion also included a motion to correct a defect in Count One, which originally charged Defendant with making a material false statement in violation of 42 U.S.C. § 408(a)(4). However, as Defendant alleges, the proper statute in question is 42 U.S.C. § 408(a)(2). The government moved to correct this typographical error on August 5, 2014 (Dkt. 22). Defendant did not object. The court granted the government's request on August 6, 2014.

## I.        Factual and Procedural Background

This case arises from Defendant's alleged false statement with regard to her application for Social Security benefits on behalf of her minor son, N.D.H.  The court summarizes the relevant facts as alleged by the government.

Defendant is a single mother residing in Garden City, Kansas.  Her oldest son, N.D.H., was born in Tremonton, Utah, in April 2008.  At the time of N.D.H.'s birth, Defendant was in a relationship and residing with Hunter.  The hospital where N.D.H. was born failed to include in the birth information a paternity declaration.  As such, when the State of Utah initially registered the child's birth information, no father's name was listed.  Because the birth registration is what triggers a request to the Social Security Administration for assignment of a Social Security number, N.D.H.'s Social Security record is also devoid of any paternity information.

A day or two after the hospital provided this initial birth information to the state, Hunter submitted the required paternity declaration claiming to be N.D.H.'s father.  The State of Utah subsequently amended its records to reflect the change.  The Social Security Administration did not.  However, in May 2009, a DNA test confirmed that Hunter could not be N.D.H.'s biological father.

On June 6, 2011, Hunter committed suicide.  A few weeks later, Hunter's sister, Michaela Rios ("Rios") took some of Hunter's belongings that Hunter had allegedly intended to give to N.D.H. to Defendant at Defendant's residence.  While there, Defendant allegedly told Rios of her plan to file for Social Security survivor benefits on behalf of N.D.H. on Hunter's Social Security account.  Rios allegedly told Defendant that Defendant could not do this because Defendant knew that Hunter was not N.D.H.'s biological father.  Defendant allegedly insisted on

her plan and purportedly offered to share the benefits with Rios. Rios allegedly declined Defendant's offer.

On September 20, 2011, Defendant submitted an application for child's insurance benefits on behalf of N.D.H. on Hunter's account. Because Hunter was not listed as N.D.H.'s father for purposes of Social Security, the Social Security Administration required Defendant to provide proof that Hunter was, in fact, N.D.H.'s father. Defendant allegedly provided a copy of the amended Utah birth certificate which listed Hunter as N.D.H.'s father. Defendant's application for benefits was approved in October 2011. Her initial award of benefits was $5,094, which included back benefits for June through September 2011 and a $255 funeral benefit.

In the meantime, Hunter's family contacted both the Social Security Administration and the Garden City Police Department accusing Defendant of improperly filing for death benefits on Hunter's account when Defendant knew that Hunter was not N.D.H.'s biological father. The Social Security Administration sent Defendant a letter notifying her that it had information that Hunter was not N.D.H.'s biological father and requesting that Defendant contact the Administration. On September 18, 2012, Defendant provided the Administration with a copy of the DNA test results showing that Hunter was not N.D.H.'s biological father. The Administration ceased payment of child survivor benefits and posted an over-payment of benefits to Defendant's Social Security account in the amount of $17,559.

Following the posting of the over-payment, the Administration's Office of Inspector General initiated a criminal investigation. This investigation resulted in the obtaining of a sworn statement from Defendant, written in her handwriting, stating as follows:

> I Marla McDonaled [sic] lied to Social Security to get money to take care of my son, [N.D.H.]  I appied [sic] for Child Survivor Benefits on behalf of my son on Michael Hunter's Social Security Record.  I provided a birth certificate listing

Michael Hunter as his father, however I knew he wasn't the father of [N.D.H.] because of a dna test.

On March 14, 2014, the grand jury returned a one-count Indictment (Dkt. 1) against Defendant charging her with making a materially false statement and representation on an application for Social Security child survivor's benefits. On July 23, 2014, the grand jury returned a sixteen-count Superseding Indictment (Dkt. 18) charging Defendant with making a false statement to obtain Social Security benefits (42 U.S.C. § 408(a)(4)), mail fraud (18 U.S.C. §§ 1341 and 1342), and wire fraud (18 U.S.C. §§ 1342 and 1343). For each of these three substantive counts, the Superseding Indictment also added a related count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), which prohibits the knowing and intentional use of another person's identity in connection with a crime.

On July 24, 2014, Defendant moved to dismiss Counts Two, Four, and Sixteen of the Superseding Indictment, namely the counts that charge her with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Dkt. 20. In her motion, Defendant argues that she cannot be charged with aggravated identity theft because: (1) the plain language of the statute requires an individual to "convert" his or her identity to that of another, (2) the purpose and intent of the statute is to criminalize that event where one individual uses the identification of another person as his or her own identification, and (3) Defendant did not "convert" Hunter's identity to her own. The government objects to Defendant's interpretation of 18 U.S.C. § 1028A(a)(1) and further argues that dismissal of these counts is premature. Based upon the relevant case law and the parties' arguments, the court agrees.

## II.    Legal Standard

"[R]ule 12 authorizes the district court to resolve before trial only those motions 'that the court can determine without a trial of the general issue.'" *United States v. Pope*, 613 F.3d 1255,

1259 (10th Cir. 2010) (quoting FED. R. CRIM. P. 12(b)(2)).  In a criminal case, the general issue is defined as evidence relevant to the question of guilt or innocence. *Id*. (internal citations omitted).  "Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'"  *Id*. (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

At this stage, an indictment is judged solely for the sufficiency of its charges without regard to the strengths and weaknesses of the government's case. *United States v. Ailsworth*, 873 F. Supp. 1450, 1460 (D. Kan. 1994) (internal citations omitted).  Courts regard an indictment sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.  *United States v. Blechman*, 782 F. Supp. 2d 1238, 1244 (D. Kan. 2011) (internal citations omitted).  A court is not to look behind the indictment to see if it is supported by substantial evidence.  *Ailsworth*, 873 F. Supp. at 1460 (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)).  "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id*. (quoting *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)).  "On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense."  *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (internal citations omitted).

### III.     Analysis

Here, Defendant's sole argument is that 18 U.S.C. § 1028A(a)(1) relates only to "converting one person's identity to another person in the context of another felony violation." Dkt. 20, at 5.  Defendant offers no case law in support of her argument, but rather simply relies on the plain language of and intent behind the statute.

Section 1028A(a)(1) reads as follows: "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."  18 U.S.C. § 1028A(a)(1).  In like form, Counts Two, Four, and Sixteen of the Superseding Indictment contain identical language, alleging that Defendant "knowingly and intentionally used, without lawful authority, a means of identification she knew to be of another person during and in relation to a violation . . . ." Dkt. 18, at 2, 3, 5.  The Superseding Indictment alleges that she did so by using the identities of Hunter and N.D.H. to obtain her own financial benefit.  Defendant therefore fails to convince this court that the indictment either fails to: (1) set forth the elements of the offense charged, (2) put Defendant on fair notice of the charges against which she must defend, or (3) prevent Defendant from being able to assert a double jeopardy defense.  As noted above, this is *all* that is required of the government at this stage. *Ailsworth*, 873 F. Supp. at 1460.  In the event that the government fails to present sufficient evidence to prove these elements, Defendant's remedy is Federal Rule of Criminal Procedure 29, not pre-trial dismissal under Rule 12.

As an aside, Defendant spent the balance of her oral argument focused on comparing the recent Seventh Circuit case *United States v. Spears* (729 F.3d 753 (7th Cir. 2013) (rehearing en

6

banc)) to the facts now before this court. A brief review of *Spears* reveals that, even if it *were* binding precedent on this court, it is not on point. In *Spears*, the defendant made a counterfeit handgun permit for an individual who was awaiting trial on a drug charge and who could therefore not obtain a legitimate permit. 729 F.3d at 754. An investigation into this individual's attempt to purchase a handgun led authorities to the defendant, who was discovered to have sold other fake credentials in addition to the counterfeit handgun permit. *Id*. The defendant was convicted of five felonies, including aggravated identity theft in violation of 18 U.S.C. § 1028A. *Id*. On appeal of three of the five convictions, a panel affirmed two convictions but reversed the third. *Id*. The defendant then asked for, and was granted a rehearing en banc. *Id*.

In his rehearing, the defendant argued that he did not transfer anything to "another person," as § 1028A requires, because the individual used her own name and birthdate. *Spears*, 729 F.3d at 755. In other words, the defendant argued that he did not violate § 1028A(a)(1) because there was no victim and "no information was stolen from, or transferred to, anyone who did not consent." *Id*. The Seventh Circuit agreed, holding that "[p]roviding a client with a bogus credential containing the client's own information is identity *fraud* but not identity *theft*; no one's identity has been stolen or misappropriated." *Id*. at 756 (emphasis in original).

This fact pattern is entirely different than the one presently before this court. To be certain, assuming the government's account of the facts to be true, there *are* victims in this case: Hunter and N.D.H, whose identities were used and misappropriated without their consent to provide a financial benefit to Defendant. Furthermore, if the government is to be believed, Defendant is charged with actually using *another's* identity during or in relation to the commission of another felony, not transferring her *own* identity for an illicit purpose, as the

7

defendant did in *Spears*. As such, the court finds Defendant's comparison to *Spears* to be unpersuasive.

Therefore, Defendant's Motion to Dismiss Counts Two, Four, and Sixteen of the Superseding Indictment is denied.

**IT IS THEREFORE ORDERED** this 18th day of August, 2014, that Defendant's Motion to Dismiss (Dkt. 20) is **DENIED**.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN<br>
CHIEF JUDGE