IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                     Case No. 6:14-CR-10033-JTM

MARLA R. MCDONALD,

          Defendant.

## MEMORANDUM AND ORDER

Defendant Marla R. McDonald ("Defendant") is charged with sixteen counts in the Superseding Indictment, including making a false statement to obtain Social Security benefits (42 U.S.C. § 408(a)(4)), mail fraud (18 U.S.C. §§ 1341 and 1342), and wire fraud (18 U.S.C. §§ 1342 and 1343). For each of these three substantive counts, the Superseding Indictment also adds a related count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), which prohibits the knowing and intentional use of another person's identity in connection with a crime. In each instance, the general nature of the crime is the same: Defendant falsely represented that one Michael McCord Hunter ("Hunter") was the biological father of her son, N.D.H. in order to obtain Social Security benefits after Hunter's death. This matter is now before the court on the government's Motion *In Limine*. Defendant has since pleaded guilty to one count of making a false statement to obtain social security benefits (Count 1 of the Superseding Indictment), but this Memorandum and Order memorializes the court's ruling a few days before the scheduled trial. For the reasons stated below, the motion is granted.

## I.        Factual and Procedural Background

This case arises from Defendant's alleged false statement with regard to her application for Social Security benefits on behalf of her minor son, N.D.H.  The court summarizes the relevant facts as alleged by the government.

Defendant is a single mother residing in Garden City, Kansas.  Her oldest son, N.D.H., was born in Tremonton, Utah, in April 2008.  At the time of N.D.H.'s birth, Defendant was in a relationship and residing with Hunter.  The hospital where N.D.H. was born failed to include in the birth information a paternity declaration.  As such, when the State of Utah initially registered the child's birth information, no father's name was listed.  Because the birth registration is what triggers a request to the Social Security Administration for assignment of a Social Security number, N.D.H.'s Social Security record is also devoid of any paternity information.

A day or two after the hospital provided this initial birth information to the state, Hunter submitted the required paternity declaration claiming to be N.D.H.'s father.  The State of Utah subsequently amended its records to reflect the change.  The Social Security Administration did not.  However, in May 2009, a DNA test confirmed that Hunter could not be N.D.H.'s biological father.

On June 6, 2011, Hunter committed suicide.  A few weeks later, Hunter's sister, Michaela Rios ("Rios") took some of Hunter's belongings that Hunter had allegedly intended to give to N.D.H. to Defendant at Defendant's residence.  While there, Defendant allegedly told Rios of her plan to file for Social Security survivor benefits on behalf of N.D.H. on Hunter's Social Security account.  Rios allegedly told Defendant that Defendant could not do this because Defendant knew that Hunter was not N.D.H.'s biological father.  Defendant allegedly insisted on

her plan and purportedly offered to share the benefits with Rios.   Rios allegedly declined Defendant's offer.

On September 20, 2011, Defendant submitted an application for child's insurance benefits on behalf of N.D.H. on Hunter's account.   Because Hunter was not listed as N.D.H.'s father for purposes of Social Security, the Social Security Administration required Defendant to provide proof that Hunter was, in fact, N.D.H.'s father.   Defendant allegedly provided a copy of the amended Utah birth certificate which listed Hunter as N.D.H.'s father.   Defendant's application for benefits was approved in October 2011.   Her initial award of benefits was $5,094, which included back benefits for June through September 2011 and a $255 funeral benefit.

In the meantime, Hunter's family contacted both the Social Security Administration and the Garden City Police Department accusing Defendant of improperly filing for death benefits on Hunter's account when Defendant knew that Hunter was not N.D.H.'s biological father.   The Social Security Administration sent Defendant a letter notifying her that it had information that Hunter was not N.D.H.'s biological father and requesting that Defendant contact the Administration.   On September 18, 2012, Defendant provided the Administration with a copy of the DNA test results showing that Hunter was not N.D.H.'s biological father.   The Administration ceased payment of child survivor benefits and posted an over-payment of benefits to Defendant's Social Security account in the amount of $17,559.

Following the posting of the over-payment, the Administration's Office of Inspector General initiated a criminal investigation.   This investigation resulted in the obtaining of a sworn statement from Defendant, written in her handwriting, stating as follows:

> I Marla McDonaled [sic] lied to Social Security to get money to take care of my son, [N.D.H.]  I appied [sic] for Child Survivor Benefits on behalf of my son on Michael Hunter's Social Security Record.   I provided a birth certificate listing

Michael Hunter as his father, however I knew he wasn't the father of [N.D.H.] because of a dna test.

On March 4, 2014, the grand jury returned a one-count Indictment (Dkt. 1) against Defendant charging her with making a materially false statement and representation on an application for Social Security child survivor's benefits.  On July 23, 2014, the grand jury returned a sixteen-count Superseding Indictment (Dkt. 18) charging Defendant with making a false statement to obtain Social Security benefits (42 U.S.C. § 408(a)(4)), mail fraud (18 U.S.C. §§ 1341 and 1342), and wire fraud (18 U.S.C. §§ 1342 and 1343).  For each of these three substantive counts, the Superseding Indictment also added a related count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), which prohibits the knowing and intentional use of another person's identity in connection with a crime.

On July 24, 2014, Defendant moved to dismiss (Dkt. 20) Counts Two, Four, and Sixteen of the Superseding Indictment, namely the counts that charge her with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  The court conducted oral argument on August 12, 2014, and denied Defendant's motion via an order issued on August 18, 2014 (Dkt. 30).

In preparation for trial, the parties submitted proposed jury instructions (Dkts. 35 and 38).  Included among Defendant's suggestions was an instruction regarding good faith (instruction #2), which states:

> The defendant asserts that she acted in good faith.  You must find her not guilty of the charges for making a false statement to the Social Security Administration, Mail Fraud and Wire Fraud if you find that she acted in good faith.  In order to find that she acted in good faith, you must find that the evidence fails to establish beyond a reasonable doubt false and misleading conduct, a failure to disclose that which should have been disclosed and deception which was intended to deceive another.

Dkt. 35, at 4.   Defendant also included an instruction regarding Defendant's obligation to

disclose to the Social Security Administration that Hunter was not N.D.H.'s biological father

(instruction #3).  The proposed instruction reads as follows:

> For all of the counts, you must find that there was a false statement and that the
> false statement was material.   The charges in this case involve making an
> application for survivor benefits to the Social Security Administration.  There are
> laws and regulations which govern what information the Social Security
> Administration must process and how the information is evaluated.  You must
> consider these laws and regulations and apply them to this case in deciding
> whether or not there was a false statement and whether or not a false statement, if
> any, was material.
> Under 42 U.S.C. § 416 of the Social Security Act, a child is eligible to receive
> survivor benefits under certain circumstances.  The term "child" means the child
> or legally adopted child of an individual.  42 U.S.C. § 416(e).  In determining
> whether an applicant is the child or parent of a fully or currently insured
> individual for purposes of this title, the Commissioner of Social Security shall
> apply such law as would be applied in determining the devolution of intestate
> personal property by the courts of the State in which such insured individual is
> domiciled at the time such applicant filed application, or, if such insured
> individual is dead, by the courts of the State in which he was domiciled at the
> time of his death.  Applicants who according to such law would have the same
> status relative to taking intestate personal property as a child or parent shall be
> deemed such.  42 U.S.C. § 416(h)(2)(A).
>
> What that law means in this case is that the Social Security Administration must
> decide who is a parent and a child according to Kansas law.  If [N.D.H.] was
> entitled to inherit property from Michael Hunter under Kansas law, then [N.D.H.]
> is a child of Michael Hunter and [N.D.H.] is entitled to survivor benefits under the
> Social Security Act.
>
> Under the Kansas Probate Code and Intestate Succession, "'[c]hildren' means
> biological children, including a posthumous child; children adopted as provided
> by law; and children whose parentage is or has been determined under the Kansas
> parentage act or prior law" K.S.A. 59-501. Under the Kansas parentage act, a man
> is presumed to be the father of a child if the man notoriously or in writing
> recognizes paternity of the child, including but not limited to a voluntary
> acknowledgment made in accordance with Kansas law. [K.S.A. 38-1114(a)(4)] A
> man is also presumed to be the father of a child if genetic test results indicate a
> probability of 97% or greater that the man is the father of the child. [K.S.A. 38-
> 1114(a)(5)] A presumption under this section may be rebutted only by clear and
> convincing evidence, by a court decree establishing paternity of the child by
> another man or as provided in subsection (c). [K.S.A. 38-1114(b)] If two or more
> presumptions under this section arise which conflict with each other, the

presumption which on the facts is founded on the weightier considerations of policy and logic, including the best interests of the child, shall control. [K.S.A. 38-1114(c)]

What that law means is that if Michael Hunter said in writing that he was [N.D.H.'s] father, as he did on the birth certificate, then he is the father and [N.D.H.] may inherit from him unless, and only unless, a court issues an order saying he is not the father and changes the paternity for [N.D.H.]. In making that decision, a court will consider policy, logic and the best interests of the child. A court could decide that the father is the man listed on the birth certificate even if he was not the biological father. [See discussion in Greer v. Greer, 2014 WL 1512465 (Kan. App. 2014) regarding Ross hearing and resolution of competing presumptions. ]

I therefore instruct you that if you find Michael Hunter voluntarily signed the birth certificate stating that he was the father of [N.D.H.], then as a matter of law under the Kansas paternity act and the Social Security Act, Michael Hunter was the father of [N.D.H] and [N.D.H.'s] mother, Ms. McDonald, was entitled to apply for survivor benefits on behalf of [N.D.H.] until a court order changed the father of [N.D.H.]. As a matter of law whether or not [N.D.H.] was the biological child of Michael Hunter is not material. Stated another way, there was no duty on Ms. McDonald to provide any information about whether or not Michael Hunter was the biological father of [N.D.H.].

Dkt. 35, at 5-9.

In response to Defendant's proposed instructions and in anticipation of her arguments at trial, the government filed a *motion in limine* on August 28, 2014 (Dkt. 40), in which it argues that Defendant's claim of good faith does not rise to the level of good faith necessary for the claim to be presented to the jury because: (1) Defendant engaged in bad faith from the time the child was born, having sworn under penalty of perjury on the paternity declaration that Hunter was the biological father of N.D.H; (2) Defendant engaged in deception when she presented to the Social Security Administration the birth certificate she *knew* was the result of her perjurious deception to the State of Utah (i.e. the paternity declaration), leading the Administration to believe that Hunter was the biological father of N.D.H; (3) the claims relating to legal fatherhood are irrelevant because the government alleges only that Defendant's false statement and

representation was that Hunter was the biological father of N.D.H., not his legal father; and (4) Defendant's legal fatherhood claims are too speculative and uncertain to go before the jury and would have arisen, if at all, after the alleged crime(s) occurred.

Therefore, the government requests the following: (1) an order from the court directing that Defendant may not refer, either in *voir dire* or opening statements, that Hunter may be the child's "legal" father or that, based on this belief, Defendant therefore acted in good faith when she applied for Social Security benefits; (2) an order from the court directing that Defendant is not permitted to inquire of government witnesses whether Hunter could be the legal father of N.D.H., or any questions related thereto; (3) an order from the court precluding presentation to the jury of a defense based on Defendant's claim that she thought Hunter was the legal father of N.D.H., at least until such time as Defendant makes a showing to the court that there is evidence to support the claim; and (4) that the court tentatively finds, absent any defense objection, that Defendant's written statement to the Social Security Administration in which she admitted that, at the time she filed for benefits, she knew Hunter was not N.D.H's father, is admissible and that Defendant waives any *Jackson v. Denno* claim.

Based on a review of the record and the parties' arguments, the court grants the government's motion.

## II.        Analysis

### A.        Good Faith

Defendant first requests that the court include in its jury instructions an instruction for good faith. The Tenth Circuit has held that to justify a specific "good faith" instruction, the defendant's evidence

> must have the capacity to rebut all evidence of false and misleading conduct, all failures to disclose that which should have been disclosed and all matters that

deceive and were intended to deceive another.  A benign explanation of only some of the acts is insufficient; the defendant must completely rebut evidence that . . . she intended to defraud.  In particular, a defendant's honest belief that a venture will ultimately succeed does not constitute good faith if, in carrying out the plan, [s]he knowingly uses false representations or pretenses with the intent to deceive.

*United States v. Chavis*, 461 F.3d 1201, 1209 (10th Cir. 2006) (internal citations omitted). However, the Circuit has also held that "a separate good faith instruction is no longer necessary where a district court properly instructs the jury on the element of intent, because a finding of the intent to defraud necessarily implies that there was no good faith."  *United States v. Bowling*, 619 F.3d 1175, 1183 (2010) (internal citations omitted).

Here, while it certainly does not appear that Defendant has the capacity to rebut all the evidence of false and misleading conduct, what is most relevant is that because the court can adequately instruct the jury on the element of intent, a separate good faith instruction is not necessary.

**B.     Legal Father**

The government also requests that Defendant: (1) not be allowed to make reference, either in *voir dire* or opening statements, to the fact that Defendant did what she did because she believed Hunter to be the legal father of N.D.H.; (2) that Defendant not be allowed to question the government's witnesses as to anything having to do with Hunter as potentially being the legal father of N.D.H.; and (3) that Defendant be precluded from presenting to the jury a defense based on her claim that she thought Hunter was the legal father of N.D.H.

Here, it is clear that Hunter was not N.D.H.'s biological father: a DNA test conclusively established, in May 2009, that Hunter could not be the child's father.  This test was performed more than two years prior to Hunter's death.  Whether or not Hunter was N.D.H.'s "legal" father, and whether or not Defendant believed this to be true at the time she filed her application with

the Social Security Administration is irrelevant to the matter before this court.  What *is* relevant to the case at hand is that the government filed its charges based on Defendant's sworn statement, in the Declaration of Paternity, that Hunter was the *biological* father of N.D.H.

Defendant argues that she never explicitly represented to the Social Security Administration that Hunter was the biological father of N.D.H.  However, the only reason Defendant was able to receive benefits was because she attached, to her Social Security application, the amended Utah birth certificate listing Hunter as the father.  This birth certificate was *based on* Hunter's Declaration of Paternity.  It was *this* false representation upon which the government chose to file charges.

The Tenth Circuit has held that

> [a] theory of defense instruction is *required only if*, without the instruction, the district court's instructions were erroneous or inadequate.  While a defendant is entitled to an instruction on [her] theory of defense where some evidence and law supports the theory, such an instruction is *not required* if it would simply give the jury a clearer understanding of the issues.

*Bowling*, 619 F.3d at 1183-84 (internal citations omitted) (emphasis added).

Therefore, the court finds as follows: (1) Defendant's proposed jury instruction number three (#3) is eliminated; (2) Defendant is prohibited from including any mention, either during *voir dire* or opening statements, that Hunter may be N.D.H.'s "legal" father; (3) Defendant is precluded from inquiring of the government's witnesses whether Hunter could be N.D.H.'s "legal" father; and (4) Defendant is precluded from presenting to the jury a defense based on her claim that she thought Hunter was the "legal" father.

## C.    Defendant's Sworn Statement

On April 2, 2013, during the course of the Administration's investigation, Defendant issued the following written statement:

I, Marla McDonald, hereby make the following free and voluntary sworn statement to _____, who has identified him/herself to me as a Special Agent with the Office of Inspector General, Social Security Administration.

I Marla McDonaled[sic] lied to Social Security to get money to take care of my son, [N.D.H.]  I appied [sic] for Child Survivor Benefits on behalf of my son on Michael Hunter's Social Security Record.  I provided a birth certificate listing Michael Hunter as his father, however I knew he wasn't the father of [N.D.H.] because of a dna test.

I have read this statement . . . and it is true, accurate, and complete to the best of my knowledge and belief . . . .

In her Opposition, Defendant stated that she is not seeking to bar introduction of this statement unless the government discloses new evidence raising an additional issue.  Therefore, the government's request that Defendant's statement be tentatively found admissible is granted.

### III.    Conclusion

By way of summary, the government's Motion *In Limine* is granted and the court hereby concludes as follows:

1. Defendant's proposed jury instruction #2 (good faith) is eliminated

2. Defendant's proposed jury instruction #3 (legal paternity) is eliminated

3. The fourth point in Defendant's proposed jury instruction #9 (Defendant used the identification of another person as her own identity in an effort to conceal her true identity) is eliminated

4. Defendant is precluded from mentioning, during *voir dire* or opening statements, anything about Hunter possibly being the child's "legal" father

5. Defendant is precluded from inquiring of the government's witnesses whether Hunter could be the "legal" father

6. Defendant is precluded from presenting to the jury any defense based on her claim that she thought Hunter was the "legal" father, at least until such time as Defendant makes a showing to the court that there is evidence to support such a claim

7. Defendant's sworn statement to the Social Security Administration is tentatively found admissible

**IT IS THEREFORE ORDERED** this 15th day of September, 2014, that the government's Motion *In Limine* (Dkt. 40) is **GRANTED**.  The government's Motion to Exclude (Dkt. 43) is therefore rendered moot.

<u>s/J. Thomas Marten</u>
J. THOMAS MARTEN
CHIEF JUDGE