IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                 Case No. 6:14-CR-10033-JTM

MARLA R. MCDONALD,

        Defendant.

## MEMORANDUM AND ORDER

Defendant Marla R. McDonald was charged with sixteen counts in the Superseding Indictment, including making a false statement to obtain Social Security benefits (42 U.S.C. § 408(a)(4)), mail fraud (18 U.S.C. §§ 1341 and 1342), and wire fraud (18 U.S.C. §§ 1342 and 1343).  For each of these three substantive counts, the Superseding Indictment also added a related count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), which prohibits the knowing and intentional use of another person's identity in connection with a crime.  In each instance, the general nature of the crime was the same: defendant falsely represented that one Michael McCord Hunter ("Hunter") was the biological father of her son, N.D.H. in order to obtain Social Security benefits after Hunter's death.  On September 4, 2014, defendant pleaded guilty to one count of making a false statement to obtain social security benefits (Count I of the Superseding Indictment) and is scheduled to be sentenced on November 18, 2014.  This matter is now before the court on defendant's Motion to Reconsider the court's decision with regard to the government's motion *in limine* denying her use of a biological father versus legal father defense.  For the reasons stated below, the motion is denied.

## I.        Factual and Procedural Background

This case arises from defendant's alleged false statement with regard to her application for Social Security benefits on behalf of her minor son, N.D.H.  The court summarizes the relevant facts as alleged by the government.

Defendant is a single mother residing in Garden City, Kansas.  Her oldest son, N.D.H., was born in Tremonton, Utah, in April 2008.  At the time of N.D.H.'s birth, defendant was in a relationship and residing with Hunter.  The hospital where N.D.H. was born failed to include in the birth information a paternity declaration.  As such, when the State of Utah initially registered the child's birth information, no father's name was listed.  Because the birth registration is what triggers a request to the Social Security Administration for assignment of a Social Security number, N.D.H.'s Social Security record is also devoid of any paternity information.

A day or two after the hospital provided this initial birth information to the state, Hunter submitted the required paternity declaration claiming to be N.D.H.'s father.  The State of Utah subsequently amended its records to reflect the change.  The Social Security Administration did not.  However, in May 2009, a DNA test confirmed that Hunter could not be N.D.H.'s biological father.

On June 6, 2011, Hunter committed suicide.   A few weeks later, Hunter's sister, Michaela Rios ("Rios") took to defendant at defendant's residence some of Hunter's belongings that Hunter had allegedly intended to give to N.D.H.  While there, defendant allegedly told Rios of her plan to file for Social Security survivor benefits on behalf of N.D.H. on Hunter's Social Security account.   Rios allegedly told defendant that defendant could not do this because defendant knew that Hunter was not N.D.H.'s biological father.  Defendant allegedly insisted on

her plan and purportedly offered to share the benefits with Rios.  Rios allegedly declined defendant's offer.

On September 20, 2011, defendant submitted an application for child's insurance benefits on behalf of N.D.H. on Hunter's account.  Because Hunter was not listed as N.D.H.'s father for purposes of Social Security, the Social Security Administration required defendant to provide proof that Hunter was, in fact, N.D.H.'s father.  Defendant allegedly provided a copy of the amended Utah birth certificate which listed Hunter as N.D.H.'s father.  Defendant's application for benefits was approved in October 2011.  Her initial award of benefits was $5,094, which included back benefits for June through September 2011 and a $255 funeral benefit.

In the meantime, Hunter's family contacted both the Social Security Administration and the Garden City Police Department accusing defendant of improperly filing for death benefits on Hunter's account when defendant knew that Hunter was not N.D.H.'s biological father.  The Social Security Administration sent defendant a letter notifying her that it had information that Hunter was not N.D.H.'s biological father and requesting that defendant contact the Administration.  On September 18, 2012, defendant provided the Administration with a copy of the DNA test results showing that Hunter was not N.D.H.'s biological father.  The Administration ceased payment of child survivor benefits and posted an over-payment of benefits to defendant's Social Security account in the amount of $17,559.

Following the posting of the over-payment, the Administration's Office of Inspector General initiated a criminal investigation.  This investigation resulted in the obtaining of a sworn statement from defendant, written in her handwriting, stating as follows:

> I Marla McDonaled [sic] lied to Social Security to get money to take care of my son, [N.D.H.]  I appied [sic] for Child Survivor Benefits on behalf of my son on Michael Hunter's Social Security Record.  I provided a birth certificate listing

Michael Hunter as his father, however I knew he wasn't the father of [N.D.H.] because of a dna test.

On March 4, 2014, the grand jury returned a one-count Indictment (Dkt. 1) against defendant charging her with making a materially false statement and representation on an application for Social Security child survivor's benefits.   On July 23, 2014, the grand jury returned a sixteen-count Superseding Indictment (Dkt. 18) charging defendant with making a false statement to obtain Social Security benefits (42 U.S.C. § 408(a)(4)), mail fraud (18 U.S.C. §§ 1341 and 1342), and wire fraud (18 U.S.C. §§ 1342 and 1343).   For each of these three substantive counts, the Superseding Indictment also added a related count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), which prohibits the knowing and intentional use of another person's identity in connection with a crime.

On July 24, 2014, defendant moved to dismiss (Dkt. 20) Counts Two, Four, and Sixteen of the Superseding Indictment, namely the counts that charged her with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).   The court conducted oral argument on August 12, 2014, and denied defendant's motion via an order issued on August 18, 2014 (Dkt. 30).

In preparation for trial, the parties submitted proposed jury instructions (Dkts. 35 and 38). Included among defendant's suggestions was an instruction regarding good faith and defendant's obligation to disclose to the Social Security Administration that Hunter was not N.D.H's biological father.   In response to defendant's proposed instructions and in anticipation of her arguments at trial, the government filed a *motion in limine* on August 28, 2014 (Dkt. 40), in which it argued, *inter alia*, that defendant should not be allowed to make any reference to her contention that Hunter was N.D.H's "legal" father.   The court granted the government's motion

(Dkt. 55).[1]  Defendant entered a plea of guilty to Count I of the Superseding Indictment on September 4, 2014.

On October 17, 2014, more than a month after her change of plea, defendant filed a Motion for Reconsideration, now pending, asking this court to reconsider its decision with regard to defendant's proposed "legal father" defense.  As she has throughout the duration of this case, defendant argues that the Utah birth certificate clearly establishes that Hunter was the father of N.D.H. as a matter of law under both the Kansas Parentage Act and the Kansas intestacy statutes. According to defendant, since N.D.H. would be eligible to inherit from Hunter, he was also eligible for Social Security survivor benefits.  As such, it was legally impossible for defendant to make a material misrepresentation or fraud to the Social Security Administration.

The government opposes defendant's motion arguing that what defendant wants is "to have her cake after she has already eaten it," and that her motion for reconsideration is nothing more than buyer's remorse on the eve of her sentencing.  Dkt. 57, at 1.  The court agrees.

## II.    Legal Standard

Local Rule 7.3(b) requires that "[p]arties seeking reconsideration of non-dispositive orders must file a motion within 14 days after the order is filed unless the court extends the time."  D. KAN. R. 7.3(b).  A motion to reconsider may be granted to correct manifest errors, or in light of newly discovered evidence.  Such a motion is appropriate only if the moving party establishes: (1) an intervening change in controlling law, (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence, or (3) the need to correct clear error or prevent manifest injustice.  *Servants of Paraclete v. Does*, 204 F. 3d 1005, 1012 (10th Cir. 2012); *see also* D. Kan. R. 7.3(b)(1)-(3).  A motion for reconsideration "is not

---

[1] While the court's order was not entered until September 15, 2014, it notified the parties of its decision at the time of defendant's plea, September 4, 2014.

appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Paraclete*, 204 F.3d at 1012.  It is not "a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994), *aff'd*, 43 F.3d 1484 (10th Cir. 1994).  The resolution of the motion is committed to the sound discretion of the court.  *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

### III.    Analysis

First and foremost, the court notes that defendant's motion is filed well out of time.  The court's order granting the government's motion *in limine* was filed on September 15, 2014 (Dkt. 55).  As such, defendant had fourteen (14) days in which to file a motion for reconsideration.  *See* D. KAN. R. 7.3(b).  She failed to do so and instead filed the instant motion thirty-two (32) days after the court's order.  Accordingly, her motion fails procedurally.

Notwithstanding defendant's procedural failure, however, she has not alleged nor shown an intervening change in law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.  In fact, defendant's argument is exactly the same as it was prior to trial, essentially that the Utah birth certificate "clearly established that Mr. Hunter was the father of NDH as a matter of law under the Kansas Parentage Act and the Kansas Intestacy law."  Dkt. 56, at 11.  According to defendant, since N.D.H. is entitled to inherit from Hunter under these laws, he is likewise eligible for survivor benefits under the Social Security Act.  Dkt. 56.  Therefore, "there could not be a material misrepresentation or fraud in this case based upon the birth certificate."  Dkt. 56, at 11.

The court has discussed at length the issues with defendant's argument, namely that whether or not Hunter was N.D.H.'s "legal" father and whether or not defendant believed this to

6

be true at the time she filed her application with the Social Security Administration was *irrelevant* to the matter before the court.  What *was* relevant was that the government filed its charges based on defendant's sworn statement, in the Declaration of Paternity, that Hunter was the *biological* father of N.D.H.  *See* Dkt. 55.  As noted above, it is not appropriate to revisit issues already addressed or advance arguments that could have been raised in a prior briefing. *Paraclete*, 204 F.3d at 1012.  Defendant does not identify *any* ground for the court to reconsider its prior ruling.  The court therefore denies defendant's motion.

Moreover, the court cannot help but remind defendant that she has, in fact, pled guilty to Count I of the Superseding Indictment and did so *voluntarily* and, to date, has not asked the court for permission to withdraw that plea.  Defendant seemingly intimates that she had no choice but to plead guilty following this court's decision with regard to her "legal father" defense. However, defendant's own actions belie this allegation.  The court accepted defendant's change of plea only after an extensive plea colloquy in which defendant, under oath, orally and in writing, swore to the court that she was *actually guilty* of Count I of the Superseding Indictment. The court draws defendant's attention specifically to paragraphs twenty (20) and twenty-three (23) of the Petition to Enter Plea of Guilty and Order Entering Plea:

> (20)    I know that the Court will not permit anyone to plead "GUILTY" who maintains he/she is innocent and, with that in mind, and because I am "GUILTY" and do not believe I am innocent, I wish to plead "GUILTY," and respectfully request the Court to accept my plea of "GUILTY" and to have the Clerk enter my plea of "GUILTY" as follows.    GUILTY TO COUNT 1 OF THE SUPERSEDING INDICTMENT.

> (23)    I offer my plea of "GUILTY" freely and voluntarily, and further state that my plea of guilty is not the result of any force or threats against me, or of any promises made to me other than those noted in this petition.  I further offer my plea of "GUILTY" with full understanding of all the matters set forth in the Indictment, in this petition, and in the certificate of my attorney which is attached to this petition.

7

Dkt. 52, at 5.  Defendant has not presented any evidence that her plea was anything but freely and voluntarily given.  The court therefore cannot ascribe any merit to defendant's claim that "deprived of her defense [defendant] had no choice but to plead guilty . . . ."  Dkt. 58, at 1.

**IT IS THEREFORE ORDERED** this 29th day of October, 2014, that defendant's Motion for Reconsideration (Dkt. 56) is hereby **DENIED**.

s/J. Thomas Marten
J. THOMAS MARTEN
CHIEF JUDGE
